ROMAX, J.,
delivered the opinion of the Court.
The presentment charges that the defendants “on the 1st of August 1849, at a race field on the lands of Thomas McComas in the said county of Cabell, unlawfully did game by betting on a horse race then and there run over the paths in said race field, contrary to the form of the statute” &c.
*688 The 5th section of the 10th chapter of the act passed 14th March 1848, entitled an act to reduce into one the several acts concerning’ crimes &c. enacts as follows: “Any free person who at any ordinary, race field or public place, shall play at any game whatever, except bowls &c., or bet on the hands or sides of others who do play, shall be punished by fine of 30 dollars, and give security” &c.
The first question in the case adjourned submits to this Court the consideration whether ‘ ‘is betting on a horse race gaming within the meaning of the section which has just been quoted.” And the answer to it must depend on this, whether a horse race is a playing at a game, so that betting upon the race is a betting on the hands or side of others who do play.
In the construction of the English statute 9 Ann, ch. 14, for preventing of excessive and deceitful gaming, it was held by the Courts in England, that the word games used in that act comprehended horse races. That statute was understood, as it would seem, to comprehend the games embraced by the preceding statute of 16 Car. 2, ch. 7, which was entitled an act against deceitful, *disorderly and excessive gaming. And in this statute horse races are expressly mentioned; and persons winning by fraud, or cheating at “cards, dice, tables, tennis, bowls, kittles, shovel board, cock fightings, horse races, dog matches, foot races, and all other games and pastimes,” were to forfeit treble the sum or value of money so won. When therefore the statute of Ann spoke of playing or betting, it was considered that it had relation to games or plays in former statutes against gaming; that foot races and horse races and the like, had been expressly mentioned as games in the statute of Charles, and that the two statutes were to be taken together. Lynall v. Longbotham, 2 Wils. R. 36; Bloxton v. Pye, 2 Wils. R. 309. The first statute in Virginia relating to gaming was passed in February 1727. 4 Hen. Stat. 214. This statute was mainly a transcript of 9 Ann, ch. 14, above referred to. There was, however, for the construction of the word games, or playing or betting at games, no prior statute in Virginia, as there was in England, that could be referred to to illustrate the meaning of this language. Hence the assembly found it necessary to pass the second statute in Virginia, in 1740. 5 Hen. Stat. 102. It recites that the former act of 1727 had been construed not to extend to horse racing and cock fighting, which had been found to produce as great mischiefs as any of the games in said act mentioned, and therefore it enacted, as in the former act, that all promises, agreements, mortgages, securities &c., where the consideration was money won, laid or betted at horse races, cock fights or any other sports or pastimes, or any wager whatsoever, should be void” &c. &c.'; adopted pretty much the very same provisions in regard to these sports and pastimes as in regard to gaming in the former statute. These provisions in both statutes related only to civil rights - and civil remedies, without at all affecting gaming as a criminal offence. Eor the first time, gaming *was made an offence in Virginia by the 4th section of this act of 1740, which prohibited gaming at ordinaries; and inflicted a penalty on ordinary keepers for permitting gaming at their ordinaries. In the revision of the laws in 1748, both of the preceding acts of 1727 and 1740 were embodied in one act; and that act vacates promises, agreements, mortgages &c., where the consideration was ‘money or other valuable thing laid or betted at cards, dice, tables, tennis, bowls, or any other game or games whatsoever, or at any horse race, cock fighting or any other sport or pastime, or on any wager whatsoever.” It will be observed that as well in this statute as in that of 1740, horse racing was not included in the list enumerated as gaming; but is added in a list seemingly distinct from the former list, and denominated sports or pastimes. A provision was made in the 5th section of this act of 1748, against the offence of gaming at ordinaries or other public places; and it enacted that “any person playing in an ordinary, race field or other public place, at any game or games whatsoever, except billiards, bowls, backgammon, chess, or drafts; or who shall bet on the side or hands of such as do game, every person on conviction thereof,” in the mode prescribed, should be liable to certain penalties. The offence of ordinary keepers permitting gaming, was also re-enacted; and justices were subjected to penalties for neglecting to put the act ’ in force; and punishments inflicted upon cheats &c. In 1792, (1 St. at large N. S. 106,) there was a re-enactment of the provisions in the same language as to the enumerated list of acts designated as gaming, and as to horse races and other sports or pastimes; and so again in the re-visal of 1819, 1 Rev. Code, ch. 147, vacating all contracts &c. made upon consideration of games, and sports or pastimes, and any wager whatsoever, as in the former laws: And in regard to the criminal offence of gaming at ordinaries and other public places, retaining the very ‘same language, (so far as is pertinent to the offence,) as that which was used in regard to the same offence in the statute of 1748; and which was used in the former revisáis.
Now it is remarkable in the same laws relating- both to civil consequences of gaming, or contracts founded on gaming considerations, the laws take the amplest scope of expression embracing what is denominated games or gaming, sports or pastimes, and all wagers whatsoever, vacating all contracts upon considerations arising out of such acts: Nevertheless the phraseology of those clauses which treat of gaming criminaliter, as offences, the language is much more circumscribed. The clause respecting gaming at ordinaries and other public places, dropped horse racing, cock *689 fighting or other sport or pastime, or any wager whatsoever, ’ ’ which had been included in the civil provisions enacted in the same law; and enacted that if any person shall at any time play in an ordinary, race field, or any public place, at any game or games whatsoever, except bowls, backgammon, &c., or shall bet on the sides or hands of such as do game, every person upon conviction thereof, &c., shall be subjected to a penalty denounced. This omission of what the statute had in preceding clauses under the denomination of sports and pastimes, and seemingly distinguished by the legislature from what was denominated gaming, and the omission of the comprehensive word “wagers” generally, does seem to be very' significant of an intention not to include the two latter classes of cases within the games or gaming to be treated crimi-naliter. In the following section (the 6th section) 147, revisal of 1819, which inflicts a penalty for winning or losing more than 20 dollars at any time within twenty-four hours, the language is “playing or betting at any game,” (not at any sport or pastime, ) with an enlargement by the words, “or wager whatsoever,” which last words were *omitted in the preceding section as has just been noticed. What may be the effect, within the 6th section, of a wager upon a horse race, is not within the scope of an enquiry confined to the 5th section of chap. 10, in the act of 1847-8, by the question which is adjourned to this Court by the Judge below. It seems also not to be without much significance, that the legislature in the very clause now under consideration, in describing public places where the gaming was made offensive, should mention a race field as one of them. For if horse racing was one of the species of the games which -were made criminally offensive, no public race field could legally be contemplated as having existence. It would have been as inappropriate as to have spoken in a law as to gaming or other offence in a billiard room during that-period when the law had entirely forbidden billiard tables to be kept or billiards to be played. The whole history of our legislation in regard to the subject of gaming, and the uniform peculiarity of the language in which that legislation has been expressed, seem most strongly to discriminate horse racing or other sport or pastime from the gaming which was made criminal; and to exclude it from the operation of this section of the law. In confirmation of this construction of the law, comes the history of this Commonwealth for more than a century since the law was passed making it penal to play at any game in an ordinary, race field or any other public place. Ño sport or pastime has, during all that time, been more favourably and more extensively indulged by all ranks and professions of society in Virginia than horse racing. It seems to have been universally regarded as a licensed amusement to all classes; which none in former times more encouraged than those holding official stations, the obligations of which would have constrained them to have enforced the denunciations of the law against the amusements which they were patronizing and enjoying, if the same had been illegal. *Tt would seem most wonderful if the terrors of this law had remained latent so long, ever since 1740, under the construction of it supposed or doubted upon this record, and now to be roused into activity in the year 1850.
This Court responds to the first.question adjourned, that betting on a horse race is not within the meaning of the 5th section of the 10th chapter of the act passed March 14th, 1848, entitled an act to reduce into one the several acts concerning crimes and punishments and proceedings in criminal cases. The decision upon this point in the case renders it unnecessary, upon this record, with the special verdict found therein, to answer the second question which has been adjourned.: because it appears that the losing or winning in the present case in any of the bets charged in the presentment, was not of a sum, or anything of greater value than 20 dollars. And moreover, that any answer to the third, fourth and fifth questions is rendered unnecessary in this case, after the decision of this Court hereinbefore given upon the first question. And in regard to the last question adjourned, it is considered by this Court that judgment should be entered for the defendants: Which is ordered to be certified.